# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN W. OUGHTRED, Individually And On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>E*TRADE FINANCIAL CORPORATION and E*TRADE SECURITIES LLC, )<br><br>Defendants. ) | Case No. 1:08-CV-3295 (SHS) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE OUGHTRED GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 1

ARGUMENT ........................................................................................................ 3

    I.    THE OUGHTRED GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .... 3

        A.    The Procedure Required By the PSLRA.................................................... 4

        B.    The Oughtred Group Satisfy The Lead Plaintiff Requirements Of The PSLRA .......................................................................................................... 5

            1.    The Oughtred Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff.............................................. 5

            2.    The Oughtred Group Has The Requisite Financial Interest In The Relief Sought By The Class...................................................... 5

            3.    The Oughtred Group Otherwise Satisfies Rule 23........................ 7

            4.    Aggregation of the Oughtred Group's Financial Interests Is Appropriate ................................................................................... 9

    II.    THE OUGHTRED GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED................................................................................................ 11

CONCLUSION ................................................................................................... 12

## TABLE OF AUTHORITIES

**Case**        **Page**

*Albert Fadem Trust v. Citigroup, Inc.*,
     239 F. Supp. 2d 344 (S.D.N.Y. 2002)................................................................ 5, 8

*In re American Bank Note Holographics Secs. Litig.*,
     93 F. Supp. 2d 424 (S.D.N.Y. 2000).................................................................. 10

*In re Cavanaugh*,
     306 F.3d 726 (9th Cir. 2002)........................................................................... 5, 6

*In re Cendant Corp. Litig.*,
     264 F.3d 201 (3d Cir. 2001).............................................................................. 5

*In re Centerline Holding Co. Sec. Litig.*,
     2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008)...................................... 9

*In re Fuwei Films Sec. Litig.*,
     247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................ 6, 7, 8

*In re Tarragon Corp. Sec. Litig.*,
     2007 U.S. Dist LEXIS 91418 (S.D.N.Y. Dec. 6, 2007)...................................... 10

*Lax v. First Merchs. Acceptance Corp.*,
     1997 U.S. Dist. LEXIS 11866 (N.D. Ill. 1997).................................................. 6

*Reimer v. Ambac Fin. Group, Inc.*,
     2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008)................................. 9, 10

*Vladimir v. Bioenvision*,
     2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007)................................ 10

*Weltz v. Lee*,
     199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................... 10

**Statutes**

15 U.S.C. § 78u-4(a) ....................................................................... passim
Fed. R. Civ. P. 23 .................................................................................. 4
Fed. R. Civ. P. 6(a)................................................................................. 5

## INTRODUCTION

Plaintiff John W. Oughtred and Class members Roger Bresnahan and Srinivasan Murari (collectively, the "Oughtred Group" or "Movants") move this Court for entry of an order: (1) appointing them as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and; (2) approving their selection of Girard Gibbs LLP ("Girard Gibbs") to serve as Lead Counsel, Stueve Siegel Hanson LLP ("Stueve Siegel") to serve as Co-Lead Counsel, and Seeger Weiss LLP ("Seeger Weiss") to serve as Liaison Counsel pursuant to the PSLRA.

The Oughtred Group submits that it should be appointed Lead Plaintiff because it: (1) timely filed a motion for appointment of Lead Plaintiff; (2) has a substantial financial interest in the action, as its members purchased $2,425,000 worth of auction rate securities from E*TRADE Financial Corporation and E*TRADE Securities LLC (collectively "E*TRADE") during the Class Period, and in light of recent issuer redemptions, currently hold $1,700,000 of these securities; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). As the presumptive Lead Plaintiff selects counsel to represent the Class under the PSLRA, and Girard Gibbs, Stueve Siegel and Seeger Weiss are experienced in the prosecution of securities class actions and will adequately represent the interests of Class members, the Court should also approve the Oughtred Group's selection of counsel to represent the Class.

## FACTUAL BACKGROUND

This litigation arises out of "the hostage crisis otherwise known as the auction-rate securities market." Gretchen Morgenson, "How to Clear a Road to Redemption," *New York Times* (May 4, 2008).[1] As the *New York Times* explained last month, "Some $300 billion worth of investors' funds—advertised as being easy as pie to cash in—are still locked up. And the brokerage firms that got investors into this mess are doing little to help." *Id.*

---

[1] http://www.nytimes.com/2008/05/04/business/04gret.html?scp=2&sq=auction+rate&st=nyt.

As described in the Complaint filed in this action, auction rate securities are long-term variable-rate instruments. Their interest rates reset at periodic auctions, generally held every 7, 28 or 35 days. Auction rate securities include collateralized student loan debt obligations, preferred shares of closed-end mutual funds, and long-term municipal debt. Despite the complex, long-term nature of these instruments, broker-dealers marketed auction rate securities to investors as risk-free, cash-equivalent alternatives to money-market funds.

E*TRADE was a substantial seller of auction rate securities. Through its financial advisors, E*TRADE represented to investors in its uniform sales presentations and written materials that auction rate securities were the same as cash and were safe, highly liquid, short-term vehicles suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest. E*TRADE received substantial commissions on the sales of auction rate securities from investors.

E*TRADE knew, but failed to disclose, material facts about the auction market and the auction rate securities it sold to investors including that: (1) auction rate securities were not cash alternatives, like money market funds, but were instead, complex, long-term financial instruments with 30-year maturity dates, or longer; (2) auction rate securities were only liquid at the time of sale because broker-dealers were artificially supporting and manipulating the auction market to maintain the appearance of liquidity and stability; (3) broker-dealers routinely intervened in auctions for their own benefit, to set rates and prevent auctions from failing; and (4) E*TRADE continued to market auction rate securities as liquid investments, even after it had determined that broker-dealers were likely to withdraw their support for the periodic auctions which would result in a "freeze" of the auction rate securities market. As a result of these material non-disclosures, the value of the auction rate securities E*TRADE sold was not as represented.

On February 13, 2008, all of the major broker-dealers withdrew their support for the auction rate securities market, causing 87 percent of all auctions to fail. The collapse of the auction rate securities market rendered more than $300 billion of outstanding securities illiquid.

2

An analyst for Citigroup, the largest underwriter of auction rate securities, recently predicted that the auction rate securities market will "cease to exist" entirely and that the collapse of the auction rate securities market could cause investors to "stop using the services of their brokerage and/or asset management firms as a result of a loss of trust." Martin Z. Braun, "Auction-Rate Market Will 'Cease to Exist,' Citi Says (Update2)," *Bloomberg* (April 15, 2008).[2]

The auction rate securities debacle has caught the attention of federal, state and industry regulators. Investigations are now being conducted by the U.S. Securities and Exchange Commission, the Financial Industry Regulatory Authority, the State of New York, and a nine-state task force including Florida, Georgia, Illinois, Massachusetts, Missouri, New Hampshire, New Jersey, Texas and Washington.[3] E*TRADE has also received a subpoena from the Attorney General of New York.[4]

Investors are also pursuing their rights. This class action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons and entities who purchased auction rate securities from E*TRADE between April 2, 2003 and February 13, 2008 (the date of the collapse of the auction rate securities market), inclusive, and continued to hold such securities as of February 13, 2008.

## ARGUMENT

**I.    THE OUGHTRED GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

The Oughtred Group includes three investors who hold $1,700,000 in auction rate securities they purchased from E*TRADE during the Class Period. The Oughtred Group respectfully submits that it should be appointed Lead Plaintiff because it has complied with all of

---

[2] http://www.bloomberg.com/apps/news?pid=20601213&refer=home&sid=aa6nZyh.SrNU.

[3] http://www.bloomberg.com/apps/news?pid=20601087&refer=home&sid=awpbOuGDDcs8.

[4] http://www.reuters.com/article/businessNews/idUSN1728336520080417.

the PSLRA's requirements, has demonstrated the largest financial interest in this litigation, and
otherwise meets the relevant requirements of Fed. R. Civ. P. 23.

### A.    The Procedure Required By the PSLRA

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in
"each private action arising under the [Exchange Act] that is brought as a plaintiff class action
pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).
The plaintiff who files the initial action must publish a notice to the class, within 20 days of
filing the complaint, informing class members of their right to file a motion for appointment as
lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The Oughtred Group's counsel, on behalf of
named plaintiff John W. Oughtred, were the first to file an action relating to E*TRADE's sale of
auction rate securities, and caused notice to be published on *Business Wire* on April 2, 2008. *See*
Declaration of Jonathan K. Levine In Support of the Motion of for Appointment of the Oughtred
Group as Lead Plaintiff and Approval of Selection of Counsel ("Levine Dec."), Ex. A. Within
60 days of publishing the notice, any person or group of persons who are members of the
proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have
previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

The PSLRA also provides that, within 90 days after publication of the notice, the Court
shall consider any motion made by a class member and shall appoint as lead plaintiff the member
or members of the class that the court determines to be "most capable of adequately representing
the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most
adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate
> plaintiff in any private action arising under this Act is the person or
> group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to
> a notice . . .
>
> (bb)  in the determination of the court, has the largest financial
> interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal

Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).  *See generally Albert Fadem Trust v. Citigroup, Inc.,* 239 F.

Supp. 2d 344, 347 (S.D.N.Y. 2002) (Swain, J.).

**B.     The Oughtred Group Satisfies The Lead Plaintiff Requirements Of The PSLRA**

**1.     The Oughtred Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

As notice of the filing of the initial action was published on April 2, 2008, the time period

in which class members may move to be appointed lead plaintiff in this case expires on June 2,

2008.  *See* Levine Decl., Ex. A; 15 U.S.C. § 78u-4(a)(3)(A) and (B); Fed. R. Civ. P. 6(a).  The

Oughtred Group's application, filed on June 2, 2008, is thus timely.  Movants have reviewed the

complaint and are willing to serve as representative parties on behalf of the Class.  *See* Levine

Decl., Exs. B, C and D (Movants' certifications).  In addition, the Oughtred Group has selected

and retained competent counsel to represent them and the Class.  *See id.*, Ex. E (firm resume of

Girard Gibbs), Ex. F (firm resume of Stueve Siegel), Ex. G (firm resume of Seeger Weiss).

Accordingly, the Oughtred Group has satisfied the individual requirements of 15 U.S.C. § 78u-

4(a)(3)(B), and the Court should approve its application for appointment as Lead Plaintiff and its

selection of counsel to represent the Class.

**2.     The Oughtred Group Has The Requisite Financial Interest In The Relief Sought By The Class**

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the

identification of the movant with 'the largest financial interest in the relief sought by the class.'"

*In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(bb)).  "In other words, the district court must compare the financial stakes of

the various plaintiffs and determine which one has the most to gain from the lawsuit."  *In re*

*Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  "The PSLRA does not specify a method for

calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor

the Second Circuit has articulated such a method." *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). To calculate each movant's financial interest in the litigation, the Court should "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. Generally, courts have considered the following factors in determining a movant's financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *In re Fuwei Films,* 247 F.R.D. at 437 (citing *Lax v. First Merchs. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, *17 (N.D. Ill. 1997)).

The Oughtred Group has a substantial financial interest in this case. In November 2007, Mr. Oughtred purchased $250,000 in auction rate securities from E*TRADE. *See* Levine Decl., Ex. B, Attachment A. Between March 2005 and August 2007, Mr. Bresnahan purchased $1,500,000 in auction rate securities from E*TRADE. *See id.*, Ex. C, Attachment A. In January 2008, just one month before the market collapsed, Mr. Murari purchased $675,000 in auction rate securities from E*TRADE. *See id.*, Ex. D, Attachment A. Each member of the Oughtred Group held all of these shares through the end of the Class Period. E*TRADE had not disclosed the risks associated with auction rate securities prior to selling them to Movants.

At the close of the Class period on February 13, 2008, the Oughtred Group held auction rate securities with a par value of $2,425,000. *See* Levine Decl., Ex. H (analysis of the Oughtred Group's Class Period transactions). Upon the collapse of the auction market at the end of the Class Period, all of those securities were rendered illiquid, precluding Movants from selling their shares on the auction market. In April and May 2008, issuers redeemed $125,000 of Mr. Oughtred's auction rate securities and $600,000 of Mr. Bresnahan's auction rate securities. *See id.* Mr. Murari's illiquid auction rate securities have not been redeemed since the end of the Class Period.

Because E*TRADE sold auction rate securities as highly liquid cash equivalents, and these securities are now illiquid, each movant's financial interest can be measured conservatively

6

by the amount of his or her investment that remains illiquid—in other words, the par value of the auction rate securities that were purchased from E\*TRADE during the Class Period that have not been redeemed by the issuer.  Under this formulation, the Oughtred Group's financial interest for purposes of this motion, is $1,700,000— the combined par value of the shares of now-illiquid auction rate securities Movants purchased from E\*TRADE during the Class Period and held at the end of the Class Period that were not redeemed after the Class Period.  Given the nature of the securities at issue, this is an objective and conservative method for calculating the financial interest of each movant seeking appointment as Lead Plaintiff under the PSLRA.

To the best of the Oughtred Group's knowledge, no other applicant with a greater financial interest seeks appointment as Lead Plaintiff in this matter.  The Oughtred Group thus satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3.     The Oughtred Group Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy — concern the personal characteristics of the class representative.  Consequently, a court deciding a lead plaintiff motion should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), as "the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *In re Fuwei Films,* 247 F.R.D. at 436 (quotations

omitted); *see also Fadem Trust,* 239 F. Supp. 2d at 347 ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). Movants satisfy both the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same course of events and are based on similar legal theories as the claims of the class members. *See, e.g., In re Fuwei Films,* 247 F.R.D. at 436. Typicality does not require that there be no factual differences between the class representative and the class members, because it is the generalized nature of the claims asserted that determines whether the class representative is typical. *See id.* ("The lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement.") (citations omitted).

Movants are typical because, like all other Class members, they: (1) purchased auction rate securities from E*TRADE during the Class Period as a result of E*TRADE's allegedly materially false and misleading statements and omissions concerning the liquidity and risk characteristics of the auction rate securities and the auction market; (2) held auction rate securities on the date that all broker-dealers withdrew their support for the auction market; and (3) are consequently unable to sell their auction rate securities at par value. As the Oughtred Group's claims and the claims of other Class members arise out of the same course of events, the Oughtred Group satisfies the typicality requirement.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its adequacy inquiry to the existence of any conflict between the Oughtred Group's interests and the interests of Class members. A proposed lead plaintiff is adequate where: (1) there is no conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel is qualified, experienced and generally able to conduct the proposed litigation. *In re Fuwei Films,* 247 F.R.D. at 436 (citations omitted). Additionally, the lead plaintiff should have a "sufficient interest in the outcome to ensure vigorous advocacy." *Id.*

Movants are adequate representatives of the Class. Their interests are aligned with those of Class members, and there is no evidence of any antagonism between their interests and those of the Class. Like Class members, the Oughtred Group acquired now-illiquid auction rate securities based on E*TRADE's material non-disclosures and misleading statements about auction rate securities and the auction market. Further, the Oughtred Group has taken significant steps that demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims and to continue their investigation into the facts giving rise to this action. The Oughtred Group's proposed counsel are qualified, experienced and able to conduct this complex litigation in a professional manner. The Oughtred Group is not subject to any unique defenses or other legal hindrances. Finally, the Oughtred Group, which currently holds $1,700,000 worth of illiquid auction rate securities purchased from E*TRADE during the Class Period, has a sufficient interest in the outcome of this case to ensure vigorous advocacy. For these reasons, the Oughtred Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### 4. Aggregation of the Oughtred Group's Financial Interests Is Appropriate

The PSLRA on its face contemplates appointment of more than one class member as lead plaintiff, so long as the investor group will be capable of representing the interests of the class. The PSLRA provides that a court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Under the PSLRA, a "person or group of persons" may be an adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Courts in this district routinely permit aggregated investors to serve as Lead Plaintiff. *See, e.g., Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, *7-8 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (explaining that disallowing unrelated class members to aggregate and serve as lead plaintiff is "now the minority view"); *In re Centerline Holding Co. Sec. Litig.*, 2008

U.S. Dist. LEXIS 36406, *8 (S.D.N.Y. May 5, 2008) (Schneidlin, J.) ("[W]here aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements."); *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist LEXIS 91418, *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) ("The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may."); *In re American Bank Note Holographics Secs. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) (McMahon, J.) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."); *Weltz v. Lee,* 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (Batts, J.) ("The majority of courts . . . have permitted the aggregation of claims for the purposes of becoming lead plaintiff."); *Vladimir v. Bioenvision*, 2007 U.S. Dist. LEXIS 93470, *40-42 (S.D.N.Y. Dec. 21, 2007) (Peck, M.J.).  Courts recognize, however, that appointment of an aggregate lead plaintiff may be "inappropriate where the group is too large." *Reimer,* 2008 U.S. Dist. LEXIS 38729, at *8 (citing *Weltz,* 1999 F.R.D. at 133).  The group must not be "so cumbersome as to deliver the control of the litigation into the hands of the lawyers." *Id.*

The Oughtred Group is comprised of three individuals who purchased auction rate securities and held them when the auction market collapsed.  Movants have informed themselves about this litigation, and expect to participate directly in the lawsuit.  They have also stated their willingness to serve as Lead Plaintiff along with other qualified class representatives.  *See* Levine Decl., Ex. B at ¶ 3, Ex. C at ¶ 3, Ex. D at ¶ 3.  As a group, they are neither too large nor too cumbersome to manage this litigation effectively.  Accordingly, aggregation of their claims is appropriate for purposes of the Lead Plaintiff appointment.

## II.    THE OUGHTRED GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED

Due to the complexity of this litigation, the Oughtred Group has selected three law firms to represent the class in this matter, subject to Court approval:  Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

As demonstrated by its firm resume, Girard Gibbs is experienced in litigating securities class and non-class actions and has successfully prosecuted numerous complex class cases on behalf of injured investors. *See* Levine Decl., Ex. E.  Girard Gibbs has investigated the auction rate securities market since its collapse in February 2008 and has filed the initial case against E*TRADE under the PSLRA.  Girard Gibbs has been contacted by more than 2,000 auction rate securities investors, has interviewed Class members, and has retained consultants knowledgeable in auction rate securities.  Girard Gibbs is thus in a unique position to assess the claims, damages and needs of Class members, and is well-qualified to represent their interests.  Girard Gibbs has access to numerous individuals, businesses and charities that would be willing to provide testimony or participate as non-lead plaintiffs if necessary to further the interests of the case.  This factor is critical here, as the case alleges widespread, systemic non-disclosures and misrepresentations.

Like Girard Gibbs, Stueve Siegel has taken a lead role in investigating and prosecuting cases related to auction rate securities, including the case pending against E*TRADE.  Since the collapse of the auction market in February 2008, Stueve Siegel in partnership with other firms has taken the initiative in researching the auction rate securities industry, investigating potential claims, drafting the pertinent documents for the commencement of the litigation, and contacting investors who have requested advice from an attorney.  As evidenced by its firm resume, Stueve Siegel has extensive experience prosecuting and litigating class and complex litigation in courts across the country, including securities matters. *See* Levine Decl., Ex. F.  Given its experience with complex litigation and its familiarity with the auction rate securities market, Stueve Siegel is well-equipped to serve as Co-Lead Counsel in this litigation.

Over the past decade, Seeger Weiss has emerged as one of the leading plaintiffs' firms in the United States, as demonstrated by its inclusion in the National Law Journal's 2007 "Plaintiff's Hot List" of nationally elite firms. With approximately 30 lawyers operating out of offices in four states, the firm's expertise in the areas of class action and mass tort litigation has been recognized by courts throughout the U.S. As reflected in the firm biography, Seeger Weiss has been appointed to numerous positions of leadership in a variety of multidistrict and complex litigations including securities fraud class actions. *See* Levine Decl., Ex. G. Currently, Seeger Weiss serves on the Plaintiffs' Steering Committee in the *IPO Securities Litigation*, one of the largest and most significant coordinated securities fraud prosecutions in United States history. Seeger Weiss also holds or has held leadership roles in other securities matters, including: *PixelPlus Securities Litigation, Sim, et al. v. Aspen Technology, et al., Babcock v. Citigroup, Victor v. UBS Paine Weber, et al.,* and *ATEC Group, Inc. Class Action.* Along with Girard Gibbs and Stueve Siegel, Seeger Weiss has been communicating with Class members and investigating the claims alleged in this case since the collapse of the auction market.

Accordingly, the Oughtred Group's selection of Lead, Co-Lead and Liaison Counsel should be approved.

## CONCLUSION

For the foregoing reasons, the Oughtred Group satisfies the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). The Oughtred Group respectfully requests that this Court: (1) appoint the Oughtred Group as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (2) approve its selection of Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

DATED: June 2, 2008

Respectfully submitted,

**GIRARD GIBBS LLP**

By:   *Jonathan K. Levine*
     Jonathan K. Levine (JL-8390)

Daniel C. Girard
Aaron M. Sheanin
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4500
Facsimile:  (415) 981-4846

**Proposed Lead Counsel**

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO, 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

**Proposed Co-Lead Counsel**

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY  10004
Telephone:  (212) 584-0757
Facsimile:  (212) 584-0799

**Proposed Liaison Counsel**

13

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on June 2, 2008, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

**1.    MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE OUGHTRED GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of June, 2008 at San Francisco, California.


_____/S/ Jonathan K. Levine_____

14